GEORGE FINE

*v.*

JOSEPH B. KING et al.

Lands of an insolvent decedent were sold, free of his widow's dower, to pay his debts. To secure such dower, the purchaser gave the administrators a mortgage for $2,700, the interest whereof was payable to the widow for life, and the principal, at her death, to her husband's heirs at law. The purchaser also gave another mortgage on the premises, prior to the widow's, which was afterwards paid off. The widow's dower was, in fact, only $1,700, and the purchaser afterwards borrowed $2,600 of the complainant. By an agreement with the administrators, without the privity or consent of the widow, the complainant's mortgage was to be the first lien on the premises—the administrators agreeing with the lender to indemnify him against the widow's claim to priority; and this agreement was consummated by canceling the widow's mortgage, and substituting another for $1,700, in lieu of it, subsequent to complainant's.—*Held*, in a suit for foreclosure of the lender's mortgage, that the rights and priority of the widow were unaffected thereby, but that relief could be obtained by her, in the suit, only by cross-bill.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. J. G. Shipman*, for complainant.

*Mr. O. Jeffery*, for Mary Rinehart.

THE CHANCELLOR.

The administrators of George Rinehart, deceased, under an order of the orphans court of Warren county, sold his real estate to pay his debts. It was sold free of the dower of his widow, Mary Rinehart. The property was sold to Joseph B. King, who, in order to raise part of the purchase money, gave a mortgage thereon to William Kiley, for $3,600, and for the rest, gave a mortgage for $2,709.75, to the administrators. By the terms of this latter mortgage, the interest was to be payable to Mary Rinehart, the dowress, for life, and at her death, the principal was to go to her husband's heirs at law. By an agreement between the administrators and Kiley, his mortgage had priority over the mortgage given to them. The Kiley mortgage was paid off and canceled in December, 1876. The widow was not entitled, for her dower, to interest on the whole amount of the mortgage to the administrators, but only on $1,773. In order to pay the difference to the administrators, King borrowed $2,600 of the complainant, on a mortgage to be given him on the property, but the complainant would not lend the money on the security unless it should be made the first encumbrance on the property. It was thereupon agreed between him and the administrators that his mortgage should have precedence over the mortgage to secure the dower. The arrangement was carried out by the cancellation of the mortgage for $2,709.75, and the substitution of a new one for $1,773, in its place, subsequent to that of the complainant. The widow knew nothing of this arrangement, and the cancellation and substitution were made without her knowledge or consent. In this suit, which is for foreclosure of the complainant's mortgage, she, by her answer, sets up, on this ground, her claim to priority. It is clear, from the evidence, that the complainant knew when the arrangement by which he obtained priority for his mortgage was made, that the mortgage held by the administrators was held in trust to secure the widow's dower, and he knew that the *cestuis que trust* had not consented to the arrangement. He not only admits it, but it appears, by his testimony, that the administrators agreed with him that they would personally indemnify their *cestuis que*

*trust* against any loss which the latter might sustain by reason of the loss of priority. The property will not bring enough to pay both mortgages in full, and a loss therefore will, in the existing order of priority, be sustained by the beneficiaries, under the mortgage to the administrators. Such of them as did not consent to the arrangement are entitled, in equity, to a re-instatement, to the extent of their interest therein, of the original mortgage to the administrators, thus improperly canceled. The widow alone makes defence. She, however, cannot obtain relief in the present state of the pleadings. She can only have it by cross-bill, for, in order to obtain her rights, she needs affirmative relief against the complainant.

The testimony taken on the motion to admit the widow to answer after default, was, by consent of counsel, used on the hearing as evidence in the cause. A consent to that effect should be filed. The answer, which is put in without oath, in accordance with the requirement of the bill, is defective in its statement as to the widow's ignorance of and non-consent to the cancellation and substitution. The defect is manifestly due to mere inadvertence of the pleader. The answer may be amended in that respect. When leave was given to the widow to answer after the default, leave was also given to file a cross-bill, if so advised. None was filed, and, on the hearing, it was understood that one might be filed, if deemed necessary by the court, to give the widow the relief she claimed. She will therefore have leave to file a cross-bill, and the cause will stand over for further hearing, after the issue shall have been joined, and the testimony closed—if any further testimony shall be taken—in the cross-suit.